## HUDDLESTON & WORK et al. v. KENNEDY et al.

### No. 804.

Court of Civil Appeals of Texas. Eastland.
Feb. 20, 1931.

Rehearing Denied Feb. 10, 1933.

McCormick, Bromberg, Leftwich & Carrington, of Dallas, Coombes & Andrews, of Stamford, T. R. Odell, of Haskell, and E. A. Watson, of Throckmorton, for appellants.

B. F. Reynolds and Jeff A. Fowler, both of Throckmorton, Murchison & Davis, of Haskell, and J. Fred Wright, of Throckmorton, for appellees.

HICKMAN, Chief Justice.

Huddleston & Work, a copartnership composed of G. E. Huddleston and H. Work, were the general contractors under a contract with the state of Texas, acting through the state highway department, for the construction and improvement of a certain state highway in Throckmorton county. The contractors furnished an indemnity bond for the faithful performance of said contract, as provided in article 5160, R. S. 1925, as amended by Acts 1929, c. 226, § 1 (Vernon's Ann. Civ. St. art. 5160). Subsequent to the making of the contract with the state the contractors sublet certain portions of the work to W. M. Harrison as subcontractor, and also sublet portions thereof to Douglas & Sons as subcontractors. The subcontractors entered upon and commenced the performance of the work, but after a period of a few weeks each subcontractor became involved in financial difficulties and finally each abandoned the contract. After the abandonment by the subcontractors, various of the appellees filed claims with the state highway department for labor performed and material furnished by them to the subcontractors. Certain of the appellees filed claims for money loaned to one of the subcontractors which was used to pay labor and material bills. These claims so filed with the highway department were asserted as liens upon the amount due by the state to the general contractors by virtue of articles 5472a and 5472b, Vernon's Ann. Civ. St. The highway department withheld funds due the general contractors on account of the claims so filed by appellees, whereupon the general contractors executed a release bond, as provided by the Acts of 1929, Forty-First Legislature, 2d Called Sess., p. 154, c. 78, brought forward in Vernon's Annotated Revised Civil Statutes of Texas as article 5472b—1. The appellant Union Indemnity Company was the surety on this release bond. The bond was payable to Ed L. Merriman, Earl Kennedy, Thompson Hardware Company, Bachman Bros., Joe Ingram, Eugene Pickard, Clifford Stewart, First National Bank of Throckmorton, and Throckmorton Milling Company, and was condi-

tioned as required by the above-cited statute. Upon the filing of the bond the impounded funds were paid by the state highway department to the general contractors. Thereafter, the instant suit was instituted by Earl Kennedy against Huddleston & Work and Union Indemnity Company. Each of the payees named in said bond, except Thompson Hardware Company, intervened in the suit. and in addition thereto the appellees C. A. Hughes and W. H. Everett, not made payees in said bond, also intervened. Thompson Hardware Company never made itself a party to the suit and its claim is not before us.

In their several pleadings the appellees undertook to set up a twofold cause of action. They first sought to recover upon the general contractors' original bond, given in compliance with amended article 5160, R. S. 1925 (Vernon's Ann. Civ. St. art. 5160). They sought secondly to recover on the release bond, given by the general contractors under the terms and provisions of article 5472b—1. Special exceptions of appellants were sustained to each of the petitions in so far as recovery was sought on the first bond, because the petitions wholly failed to allege the filing of a sworn itemized account with the county clerk or the general contractors within the time required by amended article 5160. The appellees refused to amend, but elected to prosecute their respective suits on that portion of their pleadings seeking a recovery on the release bond, given under article 5472b—1. Various other exceptions and demurrers were interposed by appellants, all of which were overruled.

The case was submitted to a jury on special issues. All of the issues submitted were answered favorably to appellees, and on the verdict of the jury judgment was entered in favor of the plaintiff Earl Kennedy and each of the interveners, for the respective amounts found by the jury. Huddleston & Work and Union Indemnity Company have appealed from that judgment and file in this court a joint brief.

Since none of the appellees complied with the provisions of amended article 5160, R. S. 1925, with reference to the filing of their claims with the county clerk or the general contractors, no liability existed under and by virtue of the original bond given in accordance with that article, and the trial court did not err in sustaining special exceptions to the petitions in so far as recovery was sought thereon. Indemnity Ins. Co. of North America v. South Texas Lbr. Co. (Tex. Com. App.) 29 S.W.(2d) 1009; Fidelity & Deposit Co. of Md. v. Prassel Sash & Door Co. (Tex. Civ. App.) 24 S.W.(2d) 539.

The answer to the question presented of whether liability to appellees, as furnishers of labor and material to the subcontractors, exists on the release bond executed in accordance with article 5472b—1, must be arrived at by a construction of articles 5472a and 5472b. These articles read as follows:

Art. 5472a. "That any person, firm or corporation, or trust estate, furnishing any material, apparatus, fixtures, machinery or labor to any contractor for any public improvements in this State, shall have a lien on the moneys, or bonds, or warrants, due or to become due to such contractors for such improvements; provided, such person, firm, corporation, or stock association, shall, before any payment is made to such contractor, notify in writing the officials of the State, county, town or municipality whose duty it is to pay such contractor of his claim."

Art. 5472b. "That no public official, when so notified in writing, shall pay all of said moneys, bonds or warrants, due said contractor, but shall retain enough of said moneys, bonds or warrants to pay said claim, in case it is established by judgment in a court of proper jurisdiction."

The principal contentions of appellants with regard to the construction of these articles are: (1) That the lien therein provided for is available to those only who give written notice of their claims before any payment is made to the general contractor; and (2) that the lien therein given inures to the benefit only of those who furnish labor and material to the general contractor, and not to those who furnish labor and material to subcontractors. In support of their contentions the argument is presented in appellants' brief in this manner: Legislative intent is available by resorting to the statutes in effect at the time articles 5472a and 5472b were passed, and to the emergency clause (section 3) attached to chapter 17, Acts 1925, which constitutes articles 5472a and 5472b. It is asserted in the argument that, at the time these articles were passed, article 5160 contained this provision: "Provided further, that no person or persons, firm or corporation shall be secured in the payment of any claim contracted prior to the execution of the contract that said bond is given to secure."

From this premise the argument is developed that, when articles 5472a and 5472b were enacted, full provision was afforded by article 5160 to all people and concerns who furnished labor and material that went into construction work, whether furnished to the general contractor or subcontractor, but that the statute excluded those persons whose claims were incurred prior to the making of the contract with the state highway department.

To quote from the brief: "Thus were left unprotected those who sold machinery and apparatus to the general contractor before he actually made the contract, and those who performed labor for him on the equipment that he had to enable him to bid for and se-

cure the contract. To remedy this situation the Legislature in 1925 enacted what is referred to as articles 5472a and b, * * *."

It is further argued that this view finds confirmation in the emergency clause. These considerations lead appellants to conclude as follows: "So, the Legislature created a complete plan of protection for all parties: on one hand by article 5160 it required a bond for the protection of the people furnishing labor and material that actually went into the job and was contracted for after the State Highway Commission had let the original contract to the general contractor, whether such labor and material were furnished to a sub-contractor or a general contractor; and on the other hand, by lien given in articles 5472a and b, it protected people who sold machinery, apparatus and material to the contractor before he made the contract to enable himself to qualify to take the contract with the state."

We were impressed by this argument until we discovered same was built upon an incorrect premise. In 1925, when articles 5472a and 5472b were enacted, article 5160 did not contain the proviso, above quoted, excluding from its application those whose claims were based upon contract made prior to the execution of the general contract with the state. That provision entered into the statute first in 1927, when article 5160 was amended by the Fortieth Legislature, First Called Session, p. 114, chap. 39. The article was again amended by the Acts of 1929, Forty-First Legislature, p. 481, chap. 226, § 1 (Vernon's Ann. Civ. St. art. 5160), so as to exclude that provision therefrom. Persons and firms covered by this provision were not excluded prior to 1927, nor have they been subsequent to 1929. In 1925, when articles 5472a and 5472b were enacted, article 5160 afforded a broad protection without excluding any class of persons coming under the general provisions thereof.

To give articles 5472a and 5472b the construction contended for would be to ascribe to the Legislature the intention, when it enacted these articles, to prefer those who contracted with the contractor prior to the date of the general contract with the state, over those who actually labored and furnished material under contracts made subsequent to the general contract with the state. We cannot discern a legislative intent, either from the language of the act, its caption, or its emergency clause, to give to those who sell machinery in advance of the general contract two liens, while limiting to one lien those who labor and furnish material subsequent to the making of the general contract. No such limitation is suggested in the caption or in the language of the act itself. The emergency clause (Acts 1925, c. 17, § 3), in the light of the statutes as they then existed, furnishes no aid. It is our view that article 5472a should not be limited to any particular group or set of claimants, but that same provides for an additional lien to that provided in article 5160. Laborers and materialmen who comply with the terms and provisions of article 5160 thereby fix a cause of action against the surety on the original bond. Failing so to do, they can derive no benefits from that bond. But, nevertheless they have a remedy in the nature of a garnishment provided in article 5472a. This double remedy, we think, is not limited to any particular group or class, but is available to all persons, firms, and corporations furnishing any material, apparatus, fixtures, machinery, or labor, whether prior or subsequent to the making of the original contract between the contractor and the state or municipality. This view finds support in the provisions of article 6674m, Vernon's Ann. Civ. St., wherein it is provided that the state highway commission shall retain 10 per cent. of the contract price for road improvement until the entire work has been completed and accepted, "and final payment shall not be made until it is shown that all sums of money due for any labor, materials or equipment furnished for the purpose of such improvements made under any such contract have been paid." These statutes are in pari materia and should be construed together. Thus considering them, and in connection with article 5160, a policy seems to be evidenced to protect those who furnish material and perform labor for the benefit of the public, without distinction as between those who furnish to general contractors and those who furnish to subcontractors. Article 6674k, Vernon's Ann. Civ. St., empowers the highway commission to prescribe the form of contracts with road contractors. The contract in the instant case obligated the contractors to "provide all the necessary machinery, tools, apparatus and other means of construction" and to "do all the work" called for in the contract. The commission is required to withhold 10 per cent. of the contract price to guarantee the performance of this obligation. The responsibility is thus placed upon the general contractor to provide for his own protection in subletting the work which he has contracted to do, and laborers and materialmen are relieved of the responsibility of investigating and determining the solvency of the subcontractors and the wisdom of their contracts.

It is insisted that, in construing these statutes, we should give to the word "any," as used in article 5472a, a literal meaning, and restrict the time within which claims should be filed under that article so as to exclude all claims filed after "any payment is made to such contractor." But, to give that word such strict and literal meaning would be to render the statute practically useless. The purpose of this act was to afford a protection to the persons therein named, and a

construction that would practically defeat that purpose should be avoided. The caption of the act reads as follows: "An Act to create a lien in favor of any person, firm or corporation who may furnish any material, apparatus, fixtures, machinery or labor, to contractors who contract for public improvements, and declaring an emergency." No restrictive meaning is suggested by this caption, and it is our opinion that same was not intended by the Legislature.

■ It is our conclusion that the judgment of the trial court in favor of those appellees who declared upon the release bond, and whose claims were for material and labor, should be affirmed. This leads us to a consideration of the claims of certain appellees not included in the foregoing designation.

■ The claim of interveners, First National Bank of Throckmorton, J. H. Ingram, and W. M. Harrison, for money loaned to the subcontractors with which to pay for labor and material, is not secured by any lien provision in article 5472a. We have been furnished by attorneys for appellants with a typewritten copy of an opinion rendered by our Supreme Court since this case was submitted. The opinion is in the case of Employers Casualty Co. v. County of Rockwall, 120 Tex. 441, 35 S.W.(2d) 690, 692, 38 S.W.(2d) 1098. This question was involved in that case and was disposed of in the following language: "The identical question here presented was decided adversely to the bank's contention by the Supreme Court in Hess & Skinner Eng. Co. v. Turney, 110 Tex. 148, 216 S. W. 621, 623, in which it was determined that a bank lending money to a contractor to be used for the payment of labor performed and material furnished on construction work did not become subrogated to the rights of the laborers and materialmen so as to be protected by the bond. See, also, Gaylord v. Loughridge, 50. Tex. 577; Lion Bonding & Surety Co. v. [First State] Bank (Tex. Civ. App.) 194 S. W. 1012."

These appellees in their brief seek to uphold their recovery upon a theory of equitable assignment by virtue of an understanding with one of the general contractors at the time the money was loaned. We do not pass on the merits of this contention. No issues on this theory of recovery were submitted to the jury. The judgment cannot be supported upon an independent ground of recovery not submitted to the jury nor requested by said appellees. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084.

■ The record is not clear as to the status of Joe Ingram. J. H. Ingram joined the First National Bank and W. M. Harrison in a petition of intervention for money loaned by the bank to Harrison on a note on which J. H. Ingram was surety. Joe Ingram filed a separate plea of intervention for labor, the use of a truck, and for money loaned to the subcontractors. No judgment was entered for Joe Ingram, but judgment was entered for J. H. Ingram for an amount which corresponds to the answers of the jury to special issues regarding Joe Ingram's claim. This amount was $704.25. We think it sufficiently appears that Joe Ingram and J. H. Ingram are one and the same person, and shall dispose of this claim on that basis. The item of $298.42 found by the jury to have been the amount paid by Ingram to laborers for labor performed on the construction work cannot be allowed for the reason above assigned. The same is true of the $29 as the value of the material paid for, but not furnished by Joe Ingram. Eliminating these two items, this claim is reduced to $376.83, and will be affirmed to that extent.

The petition of H. A. Bachman and M. B. Bachman was subject to the general demurrer of Union Indemnity Company. These interveners failed to plead the release bond, but declared only upon the bond given in accordance with article 5160. The judgment in their favor must therefore be reversed.

■ The intervener, C. A. Hughes, was not named in the release bond and sought no recovery thereon. He was awarded a personal judgment against Huddleston and Work individually for $240. His claim was below $500. Since his suit was not upon the bond and was for an amount less than $500, he should not have been granted leave to intervene, as the court had no jurisdiction to hear his independent suit for that amount. The judgment in his favor will be reversed.

The judgment in favor of the intervener W. H. Everett must be reversed for the same reason as that assigned for reversing the judgment in favor of C. A. Hughes.

It is our order that the judgment of the trial court be reversed and remanded, in so far as it awarded recovery to the following named appellees: First National Bank of Throckmorton, W. M. Harrison, H. A. Bachman, M. B. Bachman, C. A. Hughes, and W. H. Everett. That judgment in favor of J. H. Ingram be affirmed to the extent of $376.83, and reversed and remanded as to all excess over that amount, and that as between the appellants and the other appellees the judgment of the trial court be affirmed. One-half the costs will be taxed against appellants and the other half against the appellees as to which the judgment is reversed.

Affirmed in part, reformed and affirmed in part, and reversed and remanded in part.

## On Rehearing.

After our original opinion was released, and while motion for rehearing was pending, we granted appellants' motion to certify certain questions to the Supreme Court.

260

Upon the answers of that court to the questions certified [53 S.W.(2d) 1009], the motion for rehearing is now overruled.